TYSON, Judge.
James Edward Jordan was indicted by the grand jury for the offense of burglary in the second degree. The jury returned a verdict of “guilty as charged,” and the trial court set sentence at ten years imprisonment in the penitentiary. This appeal followed.
On November 27, 1978, Mrs. Hattie Holden left her home in Madison County with her two children. She testified that before leaving the house she checked the windows and doors to make sure they were secure. When she returned home that evening, she discovered that a bowl which was used to hold change had been emptied of its contents, i. e., approximately fifteen dollars. She also found that a stick which had been placed in a sliding glass door to prevent its opening had been removed. Furthermore, the window of a bedroom in the back of the house showed signs of having been pried open. She immediately called her husband who in turn called the police.
On May 11, 1979, Mrs. Holden talked to the appellant (who lives within a half block of Mrs. Holden) about this burglary. According to Mrs. Holden the appellant admitted that he had gone into her house and had taken the money from the bowl. He said he had entered through a back window and had left through the sliding glass door. Mrs. Holden denied having ever offered to drop all charges against the appellant if he admitted breaking into her house on this occasion.
Detective Eugene Marsh of the Madison Police Department testified that he questioned the appellant on May 15, 1979, about the burglary of Mrs. Holden’s home. He first spoke with appellant at appellant’s home, but then asked him to come to the police station. On the way to the station, Detective Marsh advised the appellant of his constitutional rights from a Miranda card as follows (R. p. 54):
“A. You have the right to remain silent. If you choose to talk you may stop talking at any' time. Anything you say can and will be used against you in a court of law. You have the right to talk to a lawyer of your own choosing or with anyone else and you may have your counsel present during any questioning or any statement that you may make. If you cannot afford an attorney one will be appointed for you free of charge before any questioning.”
Appellant indicated that he understood these rights and that he wished to make a statement.
Upon arrival at the police station, Detective Marsh again advised appellant of his Miranda rights. Detective Marsh asked appellant if he understood that he was not being threatened, coerced, induced, or promised anything in order to secure a *1001 statement from him. Appellant indicated that he did so understand and that he wished to make a statement. Thereafter, appellant signed a written statement in which he admitted committing the burglary of the Holden residence.
Appellant testified on voir dire in pertinent part as follows (R. pp. 47, 48, 49):
“A. All right, now, after he took me down there and asked me all those questions and I told him the same thing that she told me and he said that he would get in touch with her and find out if she wanted to press charges or not and after I signed this statement saying that I did all of that, she changed her mind and pressed charges.
“Q. You mean she did?
“A. Right.
“Q. And you say you understood that Hattie Holden wasn’t going to press the charge?
“A. She sure said it.
“Q. And you say that Detective Marsh told you that if you would sign this—
“A. Sign that statement that he wouldn’t press the charges — that I would be charged with just one of those and not all of those, just one of them.

“VOIR DIRE EXAMINATION
“EXAMINATION BY MR. RODEN-HAUSER
“Q. Are you saying that Detective Marsh told you that if you made a statement that he would try to get the charges dropped, is that what you are saying?
“A. All he did say was that if it got to it that it would just be one of these, he would just make one big thing out of it.
“Q. Did he also tell you that he could not make you any promises?
“A. Right.
“MR. RODENHAUSER: That’s all.”
State’s Exhibit Two was admitted into evidence and the State rested.
Appellant’s mother and father both testified that appellant did not leave home on the night in question. They further testified that when Mrs. Holden accused the appellant of the burglary he denied committing the crime.
Appellant’s brother testified that he recalled that Mrs. Holden only accused the appellant of stealing gasoline and not of stealing money.
A. D. Matthews testified that on the night in question he saw someone other than the appellant climb out of Mrs. Holden’s window.
In rebuttal, Detective Marsh testified, over objection, regarding another inculpato-ry statement made by appellant prior to making the statement contained in State’s Exhibit Two. According to Marsh, appellant was fully apprised of his constitutional rights and was neither threatened, coerced, induced, or promised leniency prior to making the statement. In this statement (State’s Exhibit One) appellant admitted having broken into the Holdens’ residence on three separate occasions and having stolen several items. He also admitted having stolen gasoline from the Holdens’ car and having broken into another house on the same street as the Holdens’ house.
The appellant testified in his own behalf that Mrs. Holden told him that if he admitted the burglaries in question she would drop the charges. He denied ever having broken into Mrs. Holden’s house. The appellant indicated that he did not fully understand the import of his signing the statements.
I
Appellant first argues on appeal that the State failed to sufficiently set out the elements of burglary in the second degree because “the breaking and entering proof was based on purely circumstantial evidence.” (Brief of Appellant, p. 13)
Burglary in the second degree includes the following elements: (1) breaking and (2) entering an uninhabited dwelling house (3) with intent to steal or commit a felony. § 13 — 2—41, Code of Alabama 1975; Mains v. State, 375 So.2d 1299 (1979).
*1002 In the present case, Mrs. Holden testified that her bedroom window showed signs of having been opened, that money was missing, and that a sliding door had been tampered with. This testimony properly established the corpus delicti of the offense. Reynolds v. State, Ala.Cr.App., 346 So.2d 979 (1977); Young v. State, 51 Ala.App. 400, 286 So.2d 76 (1973). Moreover, this testimony was sufficient independent proof of the corpus delicti of the offense to justify admission of appellant’s confession thereto. Snead v. State, 251 Ala. 624, 38 So.2d 576 (1949).
Thus, based on the authorities herein-above cited, we hold that the trial court properly submitted this cause to the jury.
II
Appellant next contends that the trial court erred in overruling his motion to suppress his inculpatory statements because “he was an uneducated black man of 20 years,” and the statements were not made voluntarily.
The uncontradicted testimony of Detective Marsh is that he fully advised appellant of his constitutional rights, both en route to the police station and again after arrival.
Appellant acknowledged he understood these rights as read to him and that he understood that he was neither threatened, coerced, induced, or promised anything in order to persuade him to make a statement. Appellant also testified that he could read and write and had gone as far as the eleventh grade in high school where he made average grades.
The evidence .is conflicting, however, on whether Mrs. Holden induced appellant into admitting the burglary by promising to drop the charges.
Where conflicting evidence is presented regarding the voluntariness of a confession, great weight must be given to the judgment of the trial court. McNair v. State, 50 Ala.App. 465, 280 So.2d 171 (1973).
We hold the trial court’s determination that appellant’s confessions were made knowingly, voluntarily, understandingly, and intelligently was correct. Twymon v. State, Ala.Cr.App., 358 So.2d 1072 (1978); Batteaste v. State, Ala.Cr.App., 331 So.2d 832 (1976); Elrod v. State, 281 Ala. 331, 202 So.2d 539 (1967).
Ill
Lastly, appellant maintains that the trial court erred in admitting State’s Exhibit One because it includes an admission that appellant committed another crime which itself is not provable in the present prosecution.
As a general rule, parts of a confession which include admissions of offenses separate from those relating to the crime in issue are not admissible. Madison v. State, 40 Ala.App. 62, 109 So.2d 749 (1958); Gamble, McElroy’s Alabama Evidence, § 200.15 (3d Ed. 1977).
“Of course, if the accused’s commission of the other crime is relevant for some purpose other than as tending to prove the accused’s bad character, his assertion of his commission of the other crime is admissible.” (Footnotes omitted) Gamble, supra.
In the present case, the appellant’s admission of the prior break-ins was relevant to prove his intent to steal or commit a felony simultaneously with the break-in charged in the indictment. Reeves v. State, 95 Ala. 31, 11 So. 158 (1892); Gamble, supra, at § 69.01(5).
Thus, the trial court correctly admitted State’s Exhibit One into evidence.
There being no error shown by this record, this cause is due to be and is hereby
AFFIRMED.
All the Judges concur.